No. 19,775.

J. O. BRADY, *Appellant*, v. THE FARMERS COÖPERATIVE CREAMERY & SUPPLY COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

CONTRACT—*Action for Commissions—Bills of Particulars—Evidence—Trial.* The bills of particulars of plaintiff and defendant, their written contracts and the evidence examined, and no error is perceived in overruling plaintiff's demurrer to defendant's evidence nor in the judgment in defendant's favor.

Appeal from Morris district court; ROSWELL L. KING, judge. Opinion filed January 8, 1916. Affirmed.

*M. B. Nicholson,* and *W. J. Pirtle,* both of Council Grove, for the appellant.

*D. H. Brown,* and *J. M. Miller,* both of Council Grove, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: On October 20, 1911, the plaintiff, J. O. Brady, and defendant, The Farmers Coöperative Creamery & Supply Company, of Omaha, Neb., entered into a contract whereby Brady became the agent of the creamery company for the purchase of milk and cream at Dwight, in Morris county, Kansas. The contract provided:

"First party to pay second party a commission of 2 cents per pound for each pound of butter fat received and shipped in good condition, as shown by weights and tests made by said first party at Omaha, said commission to be paid by said first party on the tenth of each month for all butter fat shipped during the preceding month, drayage 5c per can, rent $5.00, station supplied, stamps, etc. If routes are run, 3c on route, 2c less than station price, 1½c for testing route cream."

The plaintiff worked for the defendant until about January 1, 1912, when for some reason not shown the state dairy commissioner cancelled Brady's license as a cream tester. Brady resigned, and his son, A. M. Brady, a lad of eighteen years, applied for the position; and the plaintiff wrote the company urging that his son's application be given consideration. The younger Brady had a license as cream tester, and on January 23, 1912, the company and young Brady entered into a written contract substantially similar to the former one between his father and the company. The father and son continued the business about as they had done before the cancellation of the father's license and his resignation. Checks, in payment of commissions were made by the company payable to the order of J. O. and A. M. Brady.

The plaintiff brought this action to recover commissions on shipments of cream during April and May, 1912. The defendant denied the allegations touching the shipments in April and May; it set up the termination of its contract with J. O. Brady; and alleged that at the instance of the plaintiff it had entered into a contract with A. M. Brady, the plaintiff's son, on January 23, 1912. The, defendant further pleaded:

"And the defendant further answering says, that all of the butter fat or cream purchased for it at its station of Dwight, Kansas, during the month of April and May, 1912, was purchased by the said J. O. Brady and the said A. M. Brady under and by virtue of said Agreements, by the terms of which the commission to be paid for such services was to be as shown by weights and tests made by said defendant at Omaha, and the said plaintiff and the said A. M. Brady thereby guaranteed to sample and weigh all cream carefully and correctly and it avers that such service was not rendered by them in accordance with the terms of said guarantee, and it further alleges that it has fully complied with the terms of said agreements and paid to the said J. O. Brady and A. M. Brady the full amounts due to them after deducting the amounts due to the defendant for shortage in the amount of butter fat received from said station during said months, on account of the negligence and want of care or skill of the said J. O. Brady and A. M. Brady, and also for errors made by said parties in checks, issued by them for butter fat. And the said defendant denies that it is indebted to the said plaintiff in any amount whatsoever," etc.

The court without a jury heard the evidence and gave judgment for the defendant.

The plaintiff assigns error (1) in overruling demurrer to de-

fendant's evidence, and (2) in not giving judgment for plaintiff "upon the law and the evidence."

1. Appellant does not show in what particulars the defendant's evidence was insufficient as against a demurrer, so far as the burden of proof devolved upon it. There was no jury to be misled by extraneous or irrelevant facts, and the court let in everything which would be of any value in determining the rights of the parties. Whether the plaintiff could sue directly for his son's commissions on account of the son's nonage, if any were due him, without laying claim to those commissions under his right to the proceeds of his son's services, and after urging the defendant to make a contract with his son on account of his own disqualification, is doubtful. However, the whole matter was considered by the district court, and on the evidence it found nothing due the plaintiff on any view of the case.

2. It is not easy to see how it can be said by this court that plaintiff was entitled to judgment "upon the law and the evidence." The credence to be given to the testimony was for the trial court. It made a general finding for defendant. Every issuable fact upon which judgment might rest is by the general finding resolved in defendant's favor. (*Wood v. Davis,* 12 Kan. 575.)

Appellant contends that he should not lose his commission on cream lost in transit between Dwight and Omaha. But the contracts of employment speak for themselves and the district court could not make a new or amendatory contract for the parties. The commissions were to be based on the tests on the amount of cream received in Omaha. There was no claim on a *quantum meruit,* nor was any issue raised touching the loss of cream in transit. Since the pleadings were those originally filed before a justice of the peace, they were properly considered with great liberality, but we can discern no tangible basis upon which to reverse this case.

The judgment is affirmed.